| | |
|---|---|
| **DANIEL ENRIQUE FLORES-RIVERA,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) |
| | ) NO. 2:26-cv-00008 |
| **SCOTT LADWIG, Field Office Director** | ) |
| **of Enforcement and Removal Operations,** | ) |
| **New Orleans Field Office, et al.,** | ) |
| | ) |
| **Respondents.** | ) |

## MEMORANDUM OPINION

Before the Court is Daniel Enrique Flores-Rivera's Petition for Writ of Habeas Corpus (Doc. No. 1), Motion to Ascertain Status of Case (Doc. No. 15), and Motion to Expedite (Doc. No. 16). For the reasons stated herein, his petition for writ of habeas corpus will be granted.

### I.      BACKGROUND

Flores-Rivera is alleged to be a citizen of Honduras who has resided continuously in the United States since entering in 2019 as an unaccompanied minor. (Doc. No. 1 at 5; Doc. No. 15 at 1). Upon entering, he was apprehended at the border but released to the care of a sponsor after immigration authorities determined he was not a flight risk or danger to the community. (Doc. No. 1 at 14). Since becoming an adult, he has lived in the United States without any criminal charges, has valid work authorization, has a pending application for immigration relief, and is helping raise his fiancé's four-year-old child, who has autism. (Id. at 15). Nevertheless, Immigration and Customs Enforcement ("ICE") arrested him while he was a passenger in a car during a traffic stop on February 10, 2026, and he remains detained. (Doc. No. 15 at 1).

1

Flores-Rivera filed a petition for writ of habeas corpus the day after he was detained, on February 11, 2026. (Doc. No. 1). He filed a motion for issuance of order to show cause on February 16, 2026 (Doc. No. 8), which the Court granted on February 23, 2026 (Doc. No. 12). Respondents[1] filed their response on February 26, 2026 (Doc. No. 13), to which Flores-Rivera filed a reply on February 27, 2026 (Doc. No. 14).

On March 13, 2026, Flores-Rivera filed a status request (Doc. No. 15), informing the Court of his initial "master calendar" hearing in immigration court on March 2, 2026, the purpose of which was to schedule a hearing on the merits of his pending asylum application. (Doc. No. 15 at 2). He further informed the Court that he does not have an immigration attorney to represent him at his asylum hearing. (Id.). His next master calendar hearing was set for March 23, 2026. (Id.). On March 24, 2026, Flores-Rivera informed the court that the immigration judge set the hearing on the merits of his alyssum application for April 1, 2026, despite him not having counsel. (Id. at 2).

## II.     LAW AND ANALYSIS

Flores-Rivera argues that he is detained in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act ("INA"), and is therefore entitled to habeas relief pursuant to 28 U.S.C. § 2241(c)(3). (Doc. No. 1 at 15–

---

[1] Respondents are: (1) Scott Ladwig Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, ICE; (2) Kristi Noem, former Secretary of the Department of Homeland Security ("DHS"); (3) Pamela Bondi, Attorney General; (4) the Executive Office of Immigration Review; and (5) Sherrif Eddie Farris, Warden of Putnam County Jail. Noem is no longer the DHS Secretary. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), her successor, Markwayne Mullin, who has been confirmed and taken office, is automatically substituted as a respondent in this action. Further, in their response to the habeas petition, Respondents request dismissal of each of them except Ladwig, on the grounds that he is the only proper respondent. (Doc. No. 13 at 3). Any request for affirmative relief must be made by filing a motion. See Fed. R. Civ. P. 7(b).

16). Specifically, he argues that the section of the INA that applies to him is 8 U.S.C. § 1226(a), which allows for his release on conditional parole or bond, but he is instead being held under Section 1225(b)(2)(A), which provides that he is ineligible to be released on bond. (Id. at 2–3). Respondents oppose any relief because this Court lacks jurisdiction, Flores-Rivera failed to exhaust administrative remedies, and he is legally detained under 8 U.S.C. § 1225(b)(2)(A). (Doc. No. 13 at 2). The Court will address each argument.

**A. Jurisdiction**

Flores-Rivera seeks a writ of habeas corpus and therefore invokes the Court's jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the Unites States Constitution (Suspension Clause). (Doc. No. 1 at 4). Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(e)(3), § 1252(g), and § 1252(b)(9). The Court disagrees.

Respondents' argument under Section 1252(e)(3) lacks merit. That sub-section requires filing in the District of Columbia when a petitioner seeks relief from a determination made under 8 U.S.C § 1225(b). Section 1252(e)(3) further limits judicial review to determinations of whether Section 1225(b) or its implementing regulations or policies are constitutional or otherwise illegal. A plain reading of Section 1252(e)(3) leads to the conclusion that it applies to systemic challenges to Section 1225(b), which Flores-Rivera does not make. Instead, he challenges the legality of his own detention. See, e.g., Rojano Gonzalez v. Sterling, No. 1:25-CV-6080-MHC, 2025 WL 3145764, at *3 (N.D. Ga. Nov. 3, 2025) ("The Court finds that 8 U.S.C. § 1252(e)(3) is inapplicable to this case because it concerns challenges to the validity of a 'system,' and Petitioner does not raise any systemic challenges."). Flores-Rivera seeks habeas relief because Section

3

1225(b) does not apply to him.  Therefore, if he is correct, which he is (as detailed below), Section 1252(e)(3) does not bar this Court's review.[2]

Next, Respondents' reliance on 8 U.S.C. § 1252(b)(9), which channels judicial review of all legal claims arising from any action taken to remove an immigrant to the appropriate court of appeals, was rejected in Jennings v. Rodriguez, 583 U.S. 281, 252-95 (2018).  (Doc. No. 13 at 7).  In Jennings, "[c]onfronted with the 'question[ ] of law . . . whether . . . certain statutory provisions require detention without a bond hearing,' six Justices held that federal courts had jurisdiction to decide that issue."  Guartazaca Sumba v. Crowley, No. 1:25-CV-13034, 2025 WL 3126512, at *3 (N.D. Ill. Nov. 9, 2025) (quoting Jennings, 583 U.S. at 292–95 (plurality opinion); Jennings, 583 U.S. at 355 (Breyer, J., dissenting)).  "In doing so, the plurality opinion [] emphasized that the government's 'expansive interpretation of § 1252(b)(9) would lead to staggering results' that nearly every downstream consequence of an initial removal decision would 'aris[e] from' an action taken to remove someone."  Id. (quoting Jennings, 583 U.S. at 293).  The plurality rejected the literal reading of Section 1252(b)(9) limiting review to final removal decisions.

Respondents cite no case that has adopted the literal interpretation they advance here under Section 1252(b)(9).  Respondents' reliance upon whether a detention decision is the first such decision or not does not undermine the plurality's reasoning in Jennings.  Accordingly, Section 1252(b)(9) does not divest this Court of jurisdiction to review Flores-Rivera's petition for habeas relief challenging his alleged unlawful detention.

Likewise, Section 1252(g) does not bar habeas challenges that arise from detention while the administrative immigration process proceeds. That section states, in part, that "no court shall

---

[2] The Court therefore need not resolve the issue of whether Section 1252(e)(3) applies only to Section 1225(b)(1) or also to Section 1225(b)(2).  (See Doc. No. 13 at 3–4).

4

have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "[T]he Supreme Court has ruled Section 1252(g) applies only to three discrete actions: commencing proceedings, adjudicating cases, or executing removal orders." Ramirez v. Noem, No. 25-CV-03076-BAS-AHG, 2025 WL 3470436, at *1 (S.D. Cal. Dec. 3, 2025) (citing Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)). "Section 1252(g) 'does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders.'" Id. (quoting Ibarra-Perez v. United States, 154 F.4th 989, 997 (9th Cir. 2025)). Therefore, Section 1252(g) "does not foreclose review" of "claims concern[ing] detention while the administrative process lasts, and [which] may be resolved without affecting pending proceedings." Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999).

**B. Exhaustion of Administrative Remedies**

The Court now turns to Respondents' argument for dismissal because Flores-Rivera has not exhausted administrative remedies. (Doc. No. 13 at 8–9). Because Flores-Rivera has not given the Board of Immigration Appeals ("BIA") the opportunity to correct its mistakes, Respondents maintain that exhaustion of administrative remedies is appropriate before the Court acts. (Id.). This is not the first time Respondents rely on exhaustion of administrative remedies when a noncitizen seeks habeas relief. The vast majority of courts that have considered this issue have rejected Respondents' exhaustion argument. This Court joins the majority view and will not impose an exhaustion requirement.

For example, as the District Court in Alonso v. Tindall, No. 3:25-CV-652-DJH, 2025 WL 3083920, at *3–4 (W.D. Ky. Nov. 4, 2025), succinctly explained, there is no statutory basis

5

requiring exhaustion.  Even if required, the Court would waive exhaustion and consider the habeas petition for the same reasons as the Alonso court.  First, the legal question before the Court is whether Flores-Rivera is detained under Section 1225 or Section 1226, which does not require agency consideration.  Id. at *4.  The due process issue Flores-Rivera raises is also not subject to agency review.  Id.  Respondents squarely rely on Section 1225 and the BIA's determination that bond hearings are unavailable in cases like this, Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025).  Therefore, waiving exhaustion will not encourage bypassing administrative review, and further agency consideration will not likely change the agency's position.  Alonso, 2025 WL 3083920, at *3 ("The Court need not require exhaustion where pursuing administrative remedies would be a futile gesture.").  Additionally, "[i]f the Court requires administrative exhaustion, [Flores-Rivera] faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal." Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025).  To the extent it applies, administrative exhaustion is waived.

### C. Whether Section 1225 or 1226 Applies

Finally, the Court addresses the substantive legal issue presented, whether Section 1225(b)(2) or Section 1226(a) applies to Flores-Rivera's detention. Having considered the parties' legal arguments and the plethora of decisions on this issue by other district courts, the Court concludes that Section 1226(a) applies.

Two relevant subsections of the INA govern custody of a noncitizen during the removal process:

1)     8 U.S.C. § 1225(b)(2) applies to "applicants for admission," and requires mandatory detention when "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

6

2)  8 U.S.C. § 1226(a) allows for discretionary detention, release on bond, or release on conditional parole after an alien is initially arrested and detained. At the bond hearing, the risk of nonappearance and danger to the community must be considered, see Lopez-Campos v. Raycraft, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025).

Respondents argue that Section 1225(b)(2)(A) applies because Flores-Rivera entered the United States without inspection or parole and thus remains an "applicant for admission," so he is a subject to mandatory detention. (Doc. No. 13 at 11). Flores-Rivera argues that Section 1225(b)(2) applies to people seeking admission into the United States, whereas Section 1226(a) applies to people like him who are already in the country and waiting for the outcome of their removal proceedings. (Doc. No. 14 at 8 (citing Jennings, 583 U.S. at 289)).

This Court adopts the rationale and joins the holding of other courts that Section 1225(b)(2)(A) does not apply to persons like Flores-Rivera. First, the plain text of Sections 1225(b)(2)(A) and 1226(a) do not support Respondents' argument. As the Court in Godinez-Lopez v. Ladwig, No. 2:25-CV-02962-SHL-ATC, 2025 WL 3047889, at *4, 5 (W.D. Tenn. Oct. 31, 2025) explained, Section 1225 addresses noncitizens actively crossing the border, who are not clearly and beyond doubt entitled to admission. This conclusion is bolstered by the titles of the respective statutory sections: Section 1225 is titled, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and Section 1226 is titled, "Apprehension and detention of aliens." Section 1226(a) thus applies on its face to Flores-Rivera, because he was "arrested and detained" during a traffic stop, and his removal case is pending.

Respondents' reading would also render Section 1226(c) a nullity. Ladwig, 2025 WL 3047889, at * 5. Section 1226(c) creates an exception to the general rule that noncitizens who are arrested are eligible for bond by providing for mandatory detention of noncitizens with certain criminal histories. Id. If, as Respondents urge, all noncitizens who are arrested must be detained

7

without bond, then Section 1226(c) would serve no purpose. Id. That would contravene "one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (U.S. Apr. 13, 2009) (citations and quotation marks omitted).

Therefore, Section 1226(a) applies, and Flores-Rivera was entitled to a bond hearing.

**D. Due Process**

Lastly, contrary to Respondents' assertions, Flores-Rivera is entitled to the protections of due process under the Constitution, as well as the process afforded him under Section 1226(a). See, e.g., Zadvydas v. Davis, 533 U.S. 678, 693 ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). "A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." United Pet Supply, Inc. v. City of Chattanooga, Tenn., 768 F.3d 464, 485 (6th Cir. 2014) (citation and quotation marks omitted). The Sixth Circuit examines the three factors from Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976), in assessing whether due process has been afforded: "(1) the private interest affected, (2) the risk of erroneous deprivation of that private interest and the value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose." United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).

Here, Flores-Rivera has a strong liberty interest in his freedom from detention. Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025), report and recommendation adopted sub nom. Rocha Rosado v. Figueroa, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) (quoting Zadvydas, 533 U.S. at 690)

8

("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). Second, his liberty interest is at serious risk of being erroneously deprived, given that he was detained without process after living in the United States since 2019 without incident, and after already being released by immigration authorities upon a determination that he is not a flight risk or danger to the community. See id. (explaining, in a case with similar facts as here, "The Government's authority to arrest a noncitizen and revoke their release is [] proscribed by the Due Process Clause because it is well-established that individuals released from incarceration have a liberty interest in their freedom. To protect that interest, due process requires notice and a hearing, prior to any re-arrest, at which hearing the individual is afforded the opportunity to advance their arguments as to why their release should not be revoked.").

Moreover, his asylum hearing has been expedited and is scheduled for less than one week from now, even though he does not have access to counsel. No additional safeguards could therefore be provided that would protect his interests. Lastly, Respondents have no legitimate interest in continuing to detain Flores-Rivera. He was already determined by the government not to be a flight risk or danger to the community. Nothing has changed since that determination. See Rosado, 2025 WL 2337099, at *12 (explaining that "[b]y statute and regulation, as interpreted by the [BIA], ICE has the authority to re-arrest a noncitizen and revoke their release pending the outcome of removal proceedings only when there has been a [material] change in circumstances since the individual's initial release."). He has no criminal history, he has strong ties to the community, and he has a pending asylum case. Therefore, he has every incentive to continue abiding by the laws of this country, as he has since he arrived here. Consequently, his detention violates his due process rights.

9

**E. Attorney's Fees**

Flores-Rivera seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. 2412. "A claim for attorney's fees and related nontaxable expenses must be made by motion." Fed. R. Civ. P. 54(d)(2)(A). Therefore, to seek attorney's fees, Flores-Rivera must file a separate motion with supporting affidavits. See also M.D. Tenn. L.R. 54.01.

**III. CONCLUSION**

For the foregoing reasons, Flores-Rivera is "in custody in violation of the Constitution or laws or treaties of the United States" and entitled to habeas relief. 28 U.S.C. § 2241(c)(3). "[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained[.]" Boumediene v. Bush, 553 U.S. 723, 779 (June 19, 2008). Flores-Rivera's petition for writ of habeas corpus (Doc. No. 1) is therefore granted. His motion to ascertain status (Doc. No. 15) and motion for expedited ruling (Doc. No. 16) are denied as moot. Respondents shall immediately release Flores-Rivera from custody. Further, Respondents shall not re-detain Flores-Rivera under 8 U.S.C. § 1225 without an appropriate bond hearing.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE

10